FILED
 2011 Oct-24  PM 03:36
U.S. DISTRICT COURT
    N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| DEBORAH JEAN BERRY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 10-G-3623-S |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |

**MEMORANDUM OPINION**

The plaintiff, Deborah Jean Berry, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying her application for Social Security Benefits. Plaintiff timely pursued and exhausted her administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. §405(g).

**STANDARD OF REVIEW**

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). To that end this court "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." Bloodsworth, at 1239 (citations

omitted).  Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth, at 1239.

## STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish her entitlement for a period of disability, a claimant must be disabled.  The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I).  For the purposes of establishing entitlement to disability benefits, physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process. 20 C.F.R.§ 404.1520(a)-(f).  The Commissioner must determine in sequence:

      (1)    whether the claimant is currently employed;

      (2)    whether she has a severe impairment;

      (3)    whether her impairment meets or equals one listed by the Secretary;

      (4)    whether the claimant can perform her past work; and

      (5)    whether the claimant is capable of performing any work in the national economy.

Pope v. Shalala, 998 F.2d 473, 477 (7th Cir.1993); accord McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986).  "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment.  If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job." Pope at 477; accord Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995).  The Commissioner further bears the burden of showing that such work exists in the national economy in significant numbers.  Id.

## THE STANDARD FOR REJECTING
## THE TESTIMONY OF A TREATING PHYSICIAN

As the Sixth Circuit has noted:  "It is firmly established that the medical opinion of a treating physician must be accorded greater weight than those of physicians employed by the government to defend against a disability claim." Hall v. Bowen, 837 F.2d 272, 276 (6th Cir. 1988).  "The testimony of a treating physician must ordinarily be given substantial or considerable weight unless good cause is shown to the contrary." McGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); accord Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1216 (11th Cir. 1991).  In addition, the Commissioner "must specify what weight is given to a treating physician's opinion and any reason for giving it no weight ...." McGregor, 786 F.2d at 1053.  If the Commissioner ignores or fails to properly refute a treating physician's testimony, as a matter of law that testimony must be accepted as true.  McGregor, 786 F.2d at 1053; Elam, 921 F.2d at 1216.  The

Commissioner's reasons for refusing to credit a claimant's treating physician must be supported by substantial evidence. See McGregor, 786 F.2d at 1054; cf. Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987)(articulation of reasons for not crediting a claimant's subjective pain testimony must be supported by substantial evidence).

### THE STANDARD WHEN THE CLAIMANT TESTIFIES SHE SUFFERS FROM DISABLING PAIN

In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms." Foote, at 1560.

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

Foote, at 1560 (quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991). In this circuit medical evidence of pain itself, or of its intensity, is not required.

> While both the regulations and the Hand standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself. Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the Hand standard a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself. See 20 CFR §§ 404.1529 and 416.929; Hale at 1011.

Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1215 (11th Cir. 1991)(parenthetical information omitted)(emphasis added). Furthermore, it must be kept in mind that "[a]

4

claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." Foote at 1561. Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, he must be found disabled unless that testimony is properly discredited.

When the Commissioner fails to credit a claimant's pain testimony, he must articulate reasons for that decision.

> It is established in this circuit that if the Secretary fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the Secretary, as a matter of law, has accepted that testimony as true. Implicit in this rule is the requirement that such articulation of reasons by the Secretary be supported by substantial evidence.

Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987). Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if his reasons are not supported by substantial evidence, the pain testimony of the plaintiff must be accepted as true.

## THE IMPACT OF A VOCATIONAL EXPERT'S TESTIMONY

It is common for a vocational expert ("VE") to testify at a claimant's hearing before an ALJ, and in many cases such testimony is required. The VE is typically asked whether the claimant can perform his past relevant work or other jobs that exist in significant numbers withing the national economy based upon hypothetical questions about the claimant's abilities in spite of his impairments. "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical

question which comprises all of the claimant's impairments." Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999).

If the claimant is unable to perform his prior relevant work the burden shifts to the Commissioner to establish that he can perform other work. In such cases, if the vocational expert testimony upon which the ALJ relies is based upon a hypothetical question that does not take into account all of the claimant's impairments, the Commissioner has not met that burden, and the action should be reversed with instructions that the plaintiff be awarded the benefits claimed. This is so even if no other hypothetical question is posed to the VE. See Gamer v. Secretary of Health and Human Services, 815 F.2d 1275, 1280 (9th Cir. 1987)(noting that when the burden is on the Commissioner to show the claimant can do other work, the claimant is not obligated to pose hypothetical questions in order to prevail). However, it is desirable for the VE to be asked whether the claimant can perform any jobs if his subjective testimony or the testimony of his doctors is credited. Such a hypothetical question would allow disability claims to be expedited in cases in which the ALJ's refusal to credit that testimony is found not to be supported by substantial evidence.

In Varney v. Secretary of Health and Human Services, 859 F.2d 1396 (9th Cir. 1987), the Ninth Circuit adopted the Eleventh Circuit rule which holds that if the articulated reasons for rejecting the plaintiff's pain testimony are not supported by substantial evidence, that testimony is accepted as true as a matter of law. Id at 1401. The court noted that "[a]mong the most persuasive arguments supporting the rule is the

need to expedite disability claims." Id.  If the VE is asked whether the claimant could perform other jobs if his testimony of pain or other subjective symptoms is accepted as true, the case might be in a posture that would avoid the necessity of a remand.  As Varney recognized, if the VE testifies the claimant can perform no jobs if his pain testimony is accepted as true, the only relevant issue would be whether that testimony was properly discredited.  Id.  This also holds true for the opinions of treating physicians.

## DISCUSSION

The plaintiff was 48 years old at the date of ALJ Kenneth Wilson's decision.  The ALJ found that the plaintiff has the following severe impairments: cervical disk disease, status post anterior cervical diskectomy with fusion, fibrositis, scoliosis and spina bifida. [R. 15]. . Id.  The plaintiff initially alleged disability beginning December 31, 2005, but subsequently amended the onset date to February 8, 2007.  The ALJ found the plaintiff could perform a reduced range of light work, and based on the VE's testimony, found that while she could not perform her past relevant work, there are jobs that exist in significant numbers in the national economy that the plaintiff can perform. [R. 20].

On January 22, 2008, the plaintiff underwent an MRI of her cervical spine, which showed small disc bulges at C3-4 and C5-6 without canal stenosis, as well as a moderate disc protrusion at C6-7 leading to mild to moderate canal stenosis. [R. 168].  On March 11, 2008, she received an epidural steroid injection at C6-7 for mechanical neck pain. [R. 166-67].  On June 20, 2008, the plaintiff underwent an anterior cervical

diskectomy and fusion at C6-7 because of continued neck pain and bilateral shoulder pain. [R. 154-55]. At a September 4, 2008, follow-up visit, the plaintiff's surgeon noted that she was improving, although she was still "having some left sided neck and scapular type pain." [R. 158].

On March 3, 2009, the plaintiff began treatment with Ronald T. Y. Moon, Jr., D.O., who noted that the plaintiff's cervical fusion had helped some, but did not alleviate the plaintiff's pain. [R. 204]. Dr. Moon stated:

> Mrs. Berry reports gradual onset of symptoms since ~1999. She describes her pain symptoms as constant localized to the neck, middle and low with pain into the right upper and lower extremity (see pain drawing). She describes this pain as a deep stiffness and burn[ing] sensation. She reports her current pain level at 6/10. She reports her worst pain reproduced with sitting, standing, walking, rising from sitting, bending forward, bending backward, side bending, rotating, climbing up/down stairs, lifting 5 pounds, driving, weather changes, stretching. She reports sleeping poorly, with total sleep 6 hours with 2 interruptions. There is also stiffness, pain and discomfort upon awakening from sleep, which does not improve with warm showers, stretching and/or activity. She reports pain relief obtained by heat (occasionally). She admits to numbness and tingling of the upper extremities as described (see pain drawing), which is not interfering with functional activities.

[R. 206]. Dr. Moon noted that the plaintiff exhibited overt signs of pain and discomfort while at rest or in motion during his examination. [R. 207]. He also found mild paraspinal tenderness to palpation of her cervical spine, and myofascial dysfunction, chronic muscle spasm and decreased range of motion of her lumbar spine, with a positive reverse SLR.[1] Dr. Moon opined, "There was minimal evidence of inconsistency,

---

[1] A positive SLR (Straight Leg Raise test) is recognized by the regulations as a
(continued...)

submaximal effort and/or exaggerated pain behavior." [R. 209]. Dr. Moon's diagnostic impression was chronic/recurrent neck left C3-4, right shoulder and upper extremity pain, and low back L4-5/L5-S1/SI pain:

> Current symptoms are multifactorial including: soft tissue (musculoskeletal) etiology including somatic (segmental) dysfunction, myofascial pain, myositis, myotendinosis, ligamentous and muscle imbalance.
>
> \*    \*    \*
>
> Somatic dysfunction of the right OA, cervical left C3-4, right C5-6, thoracic right T4-6, ribs right 4-6, lumbar right L4-5, sacral base posterior, right anterior innominate rotation.
>
> \*    \*    \*
>
> Myofascial pain and dysfunction (mild) based on the location of trigger points, which radiate pain with palpation to well documented reference zones. There is also myofascial shortening and restriction of full range of motion without pain of involved joints.

[R. 209-10]. Dr. Moon noted that the plaintiff had her own TENS unit. [R. 211].

The plaintiff continued treatment with Dr. Moon for pain management with physical therapy. On April 29, 2010, Dr. Moon completed a physical capacities evaluation (PCE) and Clinical Assessment of Pain and Clinical Assessment of Fatigue/Weakness forms. [R. 265-71]. Dr. Moon stated that the plaintiff could lift 10 pounds occasionally or less frequently, sit for two hours and stand and walk for three

---

[1] (...continued)
clinically appropriate test for the presence of pain and limitation of motion of the spine. (See Listing 1.00(B), ¶5)  The SLR test is also known as Lasègue's sign: "In sciatica, flexion of the hip is painful when the knee is extended, but painless when the knee is flexed. This distinguishes the disorder from disease of the hip joint." Dorland's Illustrated Medical Dictionary 1525 (28th Edition).

hours combined in an eight-hour day. [R. 270]. He thought that the plaintiff's pain is present to such an extent as to be distracting to adequate performance of daily activities or work. [R. 266]. Physical activity would increase the plaintiff's pain and fatigue to such an extent that bed rest and medication is necessary. [R. 266, 268].

The ALJ gave "no significant weight" to the opinion of Dr. Moon:

> In his physical capacities evaluation (Exhibit 11F), Dr. Moon indicated the claimant was limited to less than the full range of sedentary work and had chronic moderately severe to severe pain and fatigue/weakness imposing additional functional limitations. The undersigned has carefully considered Dr. Moon's opinions but affords them no significant weight as his opinions are not consistent or compatible with his own medical report (Exhibit 7F) and the evidence as a whole. While Dr. Moon found the claimant to have abnormal gait, stance and heel/toe ambulation along with thoracic and lumbar lordosis, lumbar muscle spasms, scoliosis and cervical and lumbar paraspinal tenderness, he indicated these clinical findings were only mild in severity and <u>actually reported the claimant did not exhibit overt signs of pain or discomfort</u>. Dr. Moon also found the claimant to have decreased mobility of the shoulder joints bilaterally but normal range of motion of all remaining joints including the cervical and lumbar spine.

[R. 19](emphasis added).

The ALJ's reasons for rejecting the testimony and opinion of the plaintiff's treating physician are not supported by substantial evidence. In stating that Dr. Moon "actually reported the claimant did not exhibit overt signs of pain or discomfort," the ALJ materially misstated what Dr. Moon said in his treatment notes. In fact, as noted above, Dr. Moon specifically stated:

> Mrs. Berry <u>does</u> exhibit overt signs (verbal and nonverbal signs) of pain and discomfort while at rest or with majority of motions during this interview.

10

[R. 207](emphasis added).   Additionally, Dr. Moon palpated muscle tenderness and spasms, which are objective evidence of pain itself.  The relationship between a claimant's subjective symptoms and medical evidence is explained in Social Security Ruling 96-7p, <u>Disability Claims:  Assessing the Credibility of an Individual's Statements</u>, which contains the following:

> Symptoms cannot be measured objectively through clinical or laboratory diagnostic techniques; <u>however, their effects can often be clinically observed</u>.  The regulations at 20 CFR 404.1529(c)(2) and 416.929(c)(2) provide that objective medical evidence "is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of" an individual's symptoms and the effects those symptoms may have on the individual's ability to function.  The examples in the regulations (reduced joint motion, muscle spasm, sensory deficit, and motor disruption) illustrate findings that may result from or be associated with, the symptom of pain.  When present, these findings tend to lend credibility to an individual's allegations about pain or other symptoms and their functional effects.

SSR 96-7p at 6 (emphasis added).

Moreover, the medical evidence shows a "longitudinal history of complaints and attempts at relief" that support the plaintiff's pain allegations.  <u>See</u> SSR 96-7P 1996 WL 374186 at *7 ("In general, a longitudinal medical record demonstrating an individual's attempts to seek medical treatment for pain or other symptoms and to follow that treatment once it is prescribed lends support to an individual's allegations of intense or persistent pain or other symptoms for the purposes of judging the credibility of the individual's statements.").

Judge Johnson eloquently stated the proper role of an ALJ in his concurring opinion in  <u>Marbury v. Sullivan</u>, as follows:

> An ALJ sitting as a hearing officer abuses his discretion when he substitutes his own uninformed medical evaluations for those of claimant's treating physicians: "Absent a good showing of cause to the contrary, the opinions of treating physicians must be accorded substantial or considerable weight by the Secretary." Lamb v. Bowen, 847 F.2d 698, 703 (11th Cir. 1988).
> . . . An ALJ may, of course, engage in whatever idle speculations regarding the legitimacy of the claims that come before him in his <u>private or personal capacity</u>; however, as a hearing officer he may not arbitrarily substitute his own hunch or intuition for the diagnosis of a medical professional.

957 F.2d 837, 840-41 (11th Cir. 1992)(emphasis in original). The ALJ, therefore, "succumbed to the [forbidden] temptation to play doctor and make [his] own independent medical findings." Rohan v. Chater, 98 F.3d 966, 970 (7th Cir. 1996).

The ALJ failed to properly refute the opinion of the plaintiff's treating physician, Dr. Moon. At the ALJ hearing, the vocational expert testified that a person with the plaintiff's limitations as diagnosed by Dr. Moon could not perform any job that exists in the national economy. [R. 42].

## CONCLUSION

This is a case where "the [Commissioner] has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt." Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993). In such a case the action should be reversed and remanded with instructions that the plaintiff be awarded the benefits claimed. Id.

DONE and ORDERED 24 October 2011.

_____
UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.